**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

STERLING M. JACKSON,

      Petitioner,
:       Case No. 1:07-cv-281

-vs-
:       District Judge S. Arthur Spiegel
      Chief Magistrate Judge Michael R. Merz

JAMES ERWIN, Warden,
:
      Respondent.

**REPORT AND RECOMMENDATIONS**

Petitioner Sterling Jackson brought this action for a writ of habeas corpus under 28 U.S.C. § 2254 to obtain relief from his conviction in the Butler County Common Pleas Court. He pleads the following grounds for relief:

> **Ground One:** The trial court erred by convicting the Defendant of Escape when he had not been advised prior to sentencing on the underlying charge that Post Release Control would be imposed upon his release from prison.
>
> **Supporting Facts:** The trial court failed to notify the Defendant of Post Release Control, depriving the Adult Parole Authority [of] the power to imposed Post Release Control on the Defendant. Thereby nullifying the conviction of escape for failing to report to to [sic] a post release control officer upon release from prison.
>
> **Ground Two:** The trial court has a statutory duty to provide notice of post release control at a sentencing hearing and any sentence imposed without such notification, including a subsequent escape charge, is contrary to law.
>
> **Supporting Facts:** At sentencing for a 2002 Burglary the trial court failed to notify the Defendant of the possibility of Post Release

>Control. State law require [sic] the trial court make such notification before the Adult Parole Authority can impose Post Release Control. The Escape conviction was based upon the P.R.C. violation, hence a void violation cannot produce a new offense and conviction.
>
>**Ground Three:** The trial court erred in denying the Defendant's Crim. R. 29 motion for dismissal of count one of the indictment as there was insufficient evidence to establish beyond a reasonable doubt that he had tespassed [sic] in an occupied structure as required under RC § 2911.12.
>
>**Supporting Facts:** At no point in the trial testimony did any witness ever present evidence that the Defendant entered the structure. Burglary requires that the Defendant must have entered an occupied structure and when the state failed to prove this element of the crime the court was required under a Crim. R. 29 Motion to Aquite [sic] to dismiss the charge.
>
>**Ground Four:** A residence that has been vacated by its owner during his imprisonment is not an occupied structure as defined in RC § 2909.01 and therefore trespass in it cannot constitute the offense of Burglary under RC § 2911.12(A).
>
>**Supporting Facts:** RC § 2911.12(A)(3) requires that the structure be an occupied structure. RC § 2909.01 defines Occupied structure as as [sic] the permanent or temporary dwelling whether the occupant is actually present or not. In this case the home owner was in prison and no where in the trial testimony is there evidence this person will ever return to this dwelling or if this person will ever be released from prison. Therefore the strauctue [sic] without another person to claim residence cannot be described as a permenant [sic] or temporary dwelling.

(Petition, Doc. No. 1, at 5-6.)

### Ground One

In his first Ground for Relief, Petitioner asserts that he was not properly advised, when sentenced in 2002 for burglary, that the Ohio Adult Parole Authority could impose post-release control on him in that case. Part of the sentence he is attacking in this Court is the seventeen month

sentence he received for escape and an essential element of the escape charge is that he failed to contact the person assigned to monitor his post-release control.

Petitioner appears to believe that Respondent has raised a procedural default defense to this Ground for Relief and concedes in his Reply that that defense is well taken (Reply, Doc. No. 9, at 1-2.)  Actually, Respondent defends the first Ground for Relief on the merits.

Petitioner pled guilty to escape.  Federal habeas corpus review of claims raised by a petitioner who has entered a guilty plea is limited to "the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity."  *Tollett v. Henderson*, 411 U.S. 258, 266, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973).  Petitioner has not contended that his plea of guilty to the escape charge was not voluntary.  Instead, he contends here, as he did on direct appeal, that he was not sufficiently notified of the possibility of post-release control when he was sentenced in 2002.  As Respondent notes, this is a question of state law and on direct appeal the court of appeals held that the notification in 2002 was sufficient under state law.

This Court is bound by state court determinations of state law questions.  *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005)*; Vroman v. Brigano*, 346 F.3d 598, (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36, (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986).  Therefore the first Ground for Relief is without merit.

### Ground Two

Respondent asserts that Petitioner's second Ground for Relief is barred by the Antiterrorism

and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") one-year statute of limitations (Return of Writ, Doc. No. 5, at 8). Petitioner concedes that this is correct (Reply, Doc. No. 9, at 1-2).

The second Ground for Relief should therefore be denied.

## Ground Three

In Ground Three Petitioner asserts that there was insufficient evidence to convict him of actually entering the occupied structure he was indicted for burglarizing and therefore his motion for judgment of acquittal under Ohio R. Crim. P. 29 should have been granted.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was adopted

as a matter of Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

Respondent asserts that this claim has not been fairly presented to the Ohio courts and thus cannot be heard on the merits here. Petitioner's second assignment of error on direct appeal read:

> 2. The trial court erred to the prejudice of appellant in denying his motion pursuant to Criminal Rule 29 for dismissal of count one of the indictment as there was insufficient evidence to establish beyond a reasonable doubt that he had trespassed in an occupied structure as required under R.C. 2911.12.

(Appellant's Merit Brief, Ex. 10 to Return of Writ, Doc. No. 5.) The entire argument on this Assignment of Error was directed to Petitioner's claim that there was insufficient proof that the structure in which he trespassed – 211 Yankee Street - constituted an "occupied" structure within the meaning of the relevant Ohio statute. See *Id.* at 5-7. There is no mention of any claim that there was insufficient proof of the actual trespass. (See also Appellant's Reply Brief, Ex. 12 to Return of Writ, Doc. No. 5). In deciding the case, the Court of Appeals focused exclusively on whether the structure in question qualified as an "occupied structure" under Ohio law. *State v. Jackson,* 2006 Ohio App. LEXIS 1045 at ¶¶ 20-34 (Ohio App. 12th Dist., March 13, 2006)

When Petitioner appealed further to the Ohio Supreme Court, his second proposition of law focuses even more tightly on the issue presented to the intermediate court of appeals. He claimed:

> 2. A residence that has been vacated by its owner during his imprisonment is not an occupied structure as defined in R.C. § 2929.01(c), and therefore a trespass inside it cannot constitute the offense of burglary under R.C. 2911.12(A).

(Appellant's Memorandum in Support of Jurisdiction, Exhibit 17 to Return of Writ, Doc. No 5.)

While Petitioner is correct that the State was obliged to prove trespass, he never claimed on

direct appeal that they had failed to offer sufficient evidence on this element. Because the issue was not fairly presented on direct appeal, it is waived for any federal habeas review.

**Ground Four**

In Ground Four, Petitioner claims that because the owner of 211 Yankee Street was in prison at the time of Petitioner's trespass, that structure does not constitute an occupied structure within the meaning of Ohio Revised Code § 2909.01. This was the claim actually raised as the second assignment of error on direct appeal. In deciding it, the Court of Appeals held

> [*P20] In his second assignment of error, appellant contends that the trial court erred in failing to grant his Crim.R. 29 motion on the basis that there was insufficient evidence of an "occupied structure" to support his conviction for burglary.
>
> [*P21] When reviewing a trial court's denial of a motion for acquittal under Crim.R. 29, this court applies the same test that it would in reviewing a challenge based upon sufficiency of the evidence to support a conviction. State v. Thompson (1998), 127 Ohio App. 3d 511, 713 N.E.2d 456. Evidence is sufficient to support a conviction if any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
>
> [*P22] Appellant was convicted of burglary, in violation of R.C. 2911.12(A)(3), which states: "No person, by force, stealth, or deception, shall *** trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense."
>
> [*P23] R.C. 2909.01(C) defines an "occupied structure" as "any house, building, outbuilding, watercraft, aircraft, railroad car, truck,

trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

[*P24] "(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

[*P25] "(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

[*P26] "(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

[*P27] "(4) At the time, any person is present or likely to be present in it."

[*P28] Under subsection (1) above, the question is whether the house was being "maintained" as a "dwelling." Appellant argues that the building was not occupied because Hood, the owner, was in [**13] prison and not residing in the house. Appellant further argues that there was no evidence introduced to establish when Hood would be released from prison and a house that is unoccupied for an indefinite period of time can not be an occupied structure.

[*P29] The issue of whether a house is an "occupied structure" when it is temporarily unoccupied has been addressed in numerous cases in Ohio. At common law, in order to commit a burglary, a house had to be occupied as a dwelling, although a temporary absence with the intention of returning would not render it unoccupied. *State v. Green* (1984), 18 Ohio App.3d 69, 71, 18 Ohio B. 234, 480 N.E.2d 1128. However, if a house was permanently abandoned or its use was changed to something other than residential, it would cease to be considered a dwelling. Id.

[*P30] In analyzing the statutory definition, the Tenth District stated: "It is obvious that the General Assembly, in adopting the definition of 'occupied structure' found in R.C. 2909.01, intended to broaden the concept of the offense of burglary from one of an offense against the security of habitation, to one concerned with the serious risk of harm created by the actual or likely presence of a person in a structure of any nature. In that context, it is noteworthy that the General Assembly utilized the word 'maintained' in division (A), as

opposed to 'occupied,' although it did use that latter word in division (B), which deals with structures other than dwellings. We believe that the distinction between 'maintained' and 'occupied' is significant, in the sense that the former alludes more to the character or type of use for which the dwelling is intended to be subjected, whereas the latter is more closely related to the actual use to which the structure is presently being subjected." Id. at 71-72.

 [*P31]  The court continued, stating: "Thus, a structure which is dedicated and intended for residential use, and which is not presently occupied as a person's habitation, but, which has neither been permanently abandoned nor vacant for a prolonged period of time, can be regarded as a structure "maintained" as a dwelling within the meaning of division (A). In this context, then, division (A) includes a dwelling whose usual occupant is absent on prolonged vacation, a dwelling whose usual occupant is receiving long-term care in a nursing home, a summer cottage, or a residential rental unit which is temporarily vacant. In all these examples, even though the dwelling is not being presently occupied as a place of habitation, that situation is temporary, and persons are likely to be present from time to time to look after the property -- to help "maintain" its character as a dwelling."

 [*P32]  Using this definition, Ohio courts have determined that a building in which the owner had died, and was vacant for several months, but which was still being maintained as a residence was an occupied structure. *State v. Barker*, Licking App. No. 01-CA-0027, 2001 Ohio 1442. Likewise, a home in which the owner was sick and had gone to stay with his daughter ten months before the burglary occurred was found to be an occupied structure. *State v. Dillard* (Jan. 14, 2000), Montgomery App. No. 17761, 2000 Ohio App. LEXIS 55. Similarly, an apartment purchased with the intent of renting it out for investment purposes, a home that was vacant while being repaired, and a home uninhabitable while undergoing major renovations, were all found to meet the definition of an occupied structure. *State v. Craig* (Apr. 8, 1998), Summit App. No. 18350, 1998 Ohio App. LEXIS 1464; *State v. Tornstrom* (Nov. 19, 1998), Cuyahoga App. No. 72898, 1998 Ohio App. LEXIS 5464; *State v. Woodruff,* Lucas App. No. L-04-1125, 2005 Ohio 2268. In another case, the bottom portion of a duplex, owned by a person in prison, which held his possessions, and to which he intended to return was held to be an occupied structure, even though it had been secured by court order pending forfeiture and had the windows boarded up and padlocks placed on the home. *State v. McLemore* (Aug. 30, 1995), Lorain App.

> 95CA006037, 1995 Ohio App. LEXIS 3815.
>
> [*P33] In this case, the owner testified that the building was a four-unit apartment building, in which one of the units was currently rented out. He stated that he was in the process of doing renovations and modernizing the building and was storing building materials in one of the apartments. He testified that although the last time he saw the building was in November 2003, he received all of his mail there and all his property was still in the building. He stated that even though he is temporarily gone, the building is still his residence, is being maintained by Myles, and that it has not been abandoned.
>
> [*P34] Given these facts, we find that the building was an "occupied structure" within the meaning of R.C. 2909.01(C)(1). We find no merit to appellant's argument regarding the lack of evidence of the length of time the owner would be absent, as the relevant inquiry focuses on the nature for which the building is used, not the length of a temporary absence. Accordingly, we find that the trial court did not err in denying appellant's Crim.R. 29 motion because the evidence was sufficient to establish the essential elements of burglary proven beyond a reasonable doubt. Appellant's second assignment of error is overruled.

*State v. Jackson, supra.*

Petitioner contends that this decision is an objectively unreasonable application of *Jackson v. Virginia, supra*, but there really is no federal question at all involved with this claim. It is for the States, both by statute and by interpretation of those statutes, to say what the elements of a crime are. Here the court of appeals carefully reviewed the case law interpreting "occupied structure" and found that the apartment at 211 Yankee Street, described as it had been in the testimony, came within that definition. Under Ohio law, as it held, the key question was what a building was designed for or intended for, not the length of time that the owner was absent. Therefore, Petitioner's fourth Ground for Relief is without merit.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

January 15, 2008.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

H:\DOCS\Jackson v. Warden R&R.wpd